IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ROMAN SEBASTIAN MONZON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:21cv00242 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| SGT. EVANS, | ) | By:   Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| Defendant. | ) | |

Roman Sebastian Monzon, a Virginia inmate proceeding *pro se*, filed this civil action under 42 U.S.C. § 1983 alleging that defendant Sgt. Evans retaliated against him and denied him equal protection.[1] Sgt. Evans has filed a motion for summary judgment. After reviewing the record and arguments of the parties, the court finds that there is no genuine issue of material fact that that Sgt. Evans is entitled to summary judgment. His motion will, therefore, be granted.

## I.

Monzon alleges that on November 21, 2020, while housed at River North Correctional Center ("River North"), Sgt. Evans served him nutritionally inadequate food trays for breakfast, lunch, and dinner, for the purpose of "intentionally starv[ing]" him.[2] (2d Am. Compl. at 2 [ECF No. 28].) Monzon states that no other inmate was "served the 'meal' he was

---

[1] Monzon also raised claims against defendants Program Administration Manager Barbetto, Investigator Hickman, and Disciplinary Hearings Officer Sturgill. (*See* 2d Am. Compl. [ECF No. 28].) Monzon voluntarily dismissed his claims against those defendants in April 2023. (*See* ECF No. 51.)

[2] To the extent Monzon is alleging a claim that Sgt. Evans subjected him to cruel and unusual living conditions, his claim fails. *See Goode v. Carico*, No. 7:15cv184, 2015 U.S. Dist. LEXIS 63452, *1 (W.D. Va. May 14, 2015) (concluding that denying an inmate meals for one day fails to state a constitutional claim).

served." (*Id.*) Monzon claims that Sgt. Evans "addressed" Monzon at his cell door before serving the inadequate dinner tray and told Monzon that his meals "varied" from the standard meal because he had filed a Prison Rape Elimination Act[3] complaint against another officer. (*Id.*) Monzon alleges that Sgt. Evans "threatened [him] with further starvation and battery, if [he] continued to file complaints against staff." (*Id.* at 3.) Monzon seeks $2,200 in damages against Sgt. Evans.

Sgt. Evans has filed a motion for summary judgment, arguing that Monzon failed to exhaust available administrative remedies and that Monzon's claims nevertheless fail on their merits.

## II.

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is inappropriate "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). But

---

[3] The Prison Rape Elimination Act ("PREA") is a federal law "designed to reduce incidents of sexual misconduct in correctional facilities by using federal funding and educational initiatives." *Worley v. Ewing*, No. 2:19cv543, 2021 U.S. Dist. LEXIS 46852, at *9−10 (S.D. W.Va. Mar. 12, 2021). Specifically, PREA requires correctional agencies "to enhance education, investigation, protection, prevention, and prosecution of sexual offenses." *Id.* at *10. PREA does not impose an alternative remedial scheme, nor does it supersede the Prison Litigation Reform Act's exhaustion requirement. *Lamb v. Franke*, No. 2:12cv367, 2013 U.S. Dist. LEXIS 22708, at *5 (D. Or. Feb. 14, 2013).

if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249−50 (internal citations omitted). In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See id.* at 255; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874−75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315−16 (4th Cir. 1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial."); *Sakaria v. Trans World Airlines*, 8 F.3d 164, 171 (4th Cir. 1993) (finding that the district court properly did not consider inadmissible hearsay in an affidavit filed with motion for summary judgment).

Although the court does not make credibility determinations when adjudicating a motion for summary judgment, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Smith v. Ozmint*, 578 F.3d 246, 254 (4th Cir. 2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

## III.

Sgt. Evans argues that Monzon failed to exhaust available administrative remedies as to his claims before filing this action, as required by 42 U.S.C. § 1997e(a). The court agrees and will grant Evans's motion for summary judgment.

## A.

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." § 1997e(a). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). A prisoner must exhaust all available administrative remedies, whether or not they meet federal standards or are plain, speedy, or effective, and even if exhaustion would be futile because those remedies would not provide the relief the inmate seeks. *Davis v. Stanford*, 382 F. Supp. 2d 814, 818 (E.D. Va. 2005).

Ordinarily, an inmate must follow the required procedural steps to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d 717, 725 & 729 (4th Cir. 2008); *see Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he second PLRA amendment made clear that exhaustion is now mandatory."). An inmate's failure to follow these administrative procedures, including filing within established time limits, or failing to exhaust all levels of administrative review, is not "proper exhaustion" and will bar the claim. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). But the court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-*

*Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Accordingly, an inmate need only exhaust "available" remedies. § 1997e(a). An administrative remedy is not available "if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725.

## B.

In support of Sgt. Evans's motion for summary judgment, Grievance Coordinator B. Walls provided an affidavit; the applicable version of the Virginia Department of Corrections' ("VDOC") Offender Grievance Procedure, Operating Procedure ("OP") 866.1; and Monzon's relevant grievance record. (*See* ECF No. 40-1.) OP 866.1 details the grievance process by which offenders must resolve complaints, appeal administrative decisions, and challenge the substance of procedures. Grievance Coordinator Walls explains that the grievance process provides corrections staff a means to evaluate potential problem areas and, if necessary, correct those problems in a timely manner. There is no dispute that Monzon's claims are subject to the well-established requirements of OP 866.1.

Prior to submitting a regular grievance, an inmate must demonstrate that he has made a good-faith effort to resolve his complaint informally. According to OP 866.1, the first stage of the informal-complaint procedure is for the inmate to verbally communicate his concerns to staff. If the issue is not resolved to the inmate's satisfaction, he generally must document his good-faith effort using an informal complaint form. When an informal complaint form is received, it is logged in VACORIS, the VDOC's computer-based offender information management system, and a receipt is issued to the inmate. Within 15 days of receipt of the informal complaint form, staff should respond to the informal complaint. If an inmate is not

satisfied with the staff's response to the informal complaint, he may file a regular grievance. If no response is given to the inmate within 15 days of the logging of the informal complaint form, the inmate may file a regular grievance and he must attach the receipt of the informal complaint form to the grievance as documentation of his attempt to resolve the issue informally. The inmate is responsible for submitting the informal complaint in a timely manner so that staff can respond within the prescribed time period for filing a regular grievance.

A regular grievance generally must be filed within 30 days from the date of the incident. Regular grievances are date-stamped on the working day they are received. If the grievance meets the criteria for acceptance, it is logged in VACORIS and receipt is issued to the inmate within two working days from the date the grievance is received. If the grievance does not meet the criteria for acceptance, the grievance is returned to the inmate within two working days of its receipt, along with an explanation for why the grievance was rejected at intake. Intake rejections can be appealed to the Regional Ombudsman within five calendar days of receipt. The Regional Ombudsman's review of the intake decision is the final level of review.

If a grievance is accepted at intake, it may proceed through up to three levels of review. Grievances must be appealed through all available levels of review to satisfy the requirement of exhaustion before filing a § 1983 lawsuit. Level I reviews are conducted by Facility Unit Head. If the inmate is dissatisfied with the determination, he may appeal the determination to Level II. Level II responses are provided by the Regional Administrator, Health Services Director, Chief of Operations for Offender Management Services, or Superintendent for Education. For most issues, Level II is the final level of review. For those issues appealable to Level III, the Chief of Corrections Operations or Director of the VDOC conducts a review

of the regular grievance. There is a 30-day time limit for issuing a Level I response, 20 days for a Level II response, and 20 days for a Level III response. Expiration of the time limit (including any authorized continuances) without issuance of a response at any stage of the process automatically qualifies the grievance for appeal.

## C.

On December 14, 2020, Monzon filed an informal complaint alleging that he received "starvation rations at every meal" on November 21, 2020, and that Sgt. Evans had told him that the inadequate meals should "serve as a warning to [Monzon] for filing a PREA complaint against '[his] officers.'" (*See* ECF No. 40-1 at 19.) In the informal complaint, Monzon also noted that he had emailed the PREA complaint investigator about this "PREA complaint retaliation." (*Id.*) In response to the informal complaint, Monzon was advised that an investigation was "already opened in this matter." (*Id.*) Grievance Coordinator Walls states that Monzon did not file a regular grievance concerning the claims raised in his informal complaint or this action. (B. Walls Aff., Dec. 14, 2022, ¶ 11 [ECF No. 40-1].) Walls also contends that "Monzon's filing of a PREA complaint is not part of the grievance process and thus does not satisfy the exhaustion requirement of OP 866.1." (*Id.*)

In response to the Sgt. Evans's motion for summary judgment, Monzon submitted a declaration stating that:

> 1. On December 10, 2020, he sent a PREA complaint to Marta Monzon for forwarding to River North's PREA investigator, complaining of being starved and threatened by Sgt. Evans on November 21, 2020;[4]

---

[4] Except as to an allegation of sexual abuse (which is not at issue here), a PREA complaint is not part of, or a replacement for, the VDOC's grievance process (OP 866.1 allows an inmate to essentially skip the informal complaint step of the grievance process where there is an alleged incident of sexual abuse), and the PREA does

2.  On December 14, 2020, he filed an informal complaint concerning the alleged starvation and retaliation;

3.  On December 30, 2020, the informal complaint response stated that an investigation was being conducted;[5]

4.  On January 11, 2021, the investigation was completed;[6]

5.  On January 12, 2021, River North's PREA investigator filed a disciplinary charge against Monzon for making a false statement against Sgt. Evans;

6.  On February 5, 2021, Monzon was found guilty of the disciplinary charge; and

7.  On April 8, 2021, his disciplinary conviction was "overturned on appeal for reasons unrelated to the merits of the allegations [Monzon] made against" Sgt. Evans.[7]

(R. Monzon Decl. ¶¶ 2–9, Jan. 9, 2023 [ECF No. 49-1].)

---

not supersede the PLRA's exhaustion requirement. *See* VDOC OP 866.1(V)(F) (ECF No. 40-1 at 11); *Lamb*, 2013 U.S. Dist. LEXIS 22708, at *5; *Williams v. Sims*, No. 1:20cv1069, 2022 U.S. Dist. LEXIS 163320, at *5−6 (the existence of the PREA investigation did not act as a substitute for the inmate to exhaust his administrative remedies according to VDOC OP 866.1); *Cooper v. Barksdale*, No. 7:15cv522, 2016 U.S. Dist. LEXIS 127987, at *17 (W.D. Va. Sept. 20, 2016) ("OP 866.1 does not provide for inmates to substitute a PREA telephone report in place of an informal complaint or a regular grievance"); *Barringer v. Stanley*, No. 5:16cv17, 2017 U.S. Dist. LEXIS 38006, at *7 (W.D.N.C. Mar. 16, 2017) (holding that when plaintiff's grievance was forwarded to prison's PREA official for investigation, that did not qualify as exhaustion because "PREA complaints are not prison grievances for purposes of satisfying the administrative remedies requirement under the PLRA"). Instead, an offender may pursue a complaint of staff reprisal through the VDOC's grievance process, OP 866.1. *See* VDOC OP 866.1(IV)(F)(2) (ECF No. 40-1 at 7.)

[5] Monzon does not allege that he filed a regular grievance concerning his claims after he received this response to his informal complaint.

[6] Monzon does not allege that he filed a regular grievance concerning his claims when the investigation was completed.

[7] Monzon also does not allege that he filed a regular grievance concerning his claims after his disciplinary conviction was vacated.

Monzon does not assert that he ever filed a regular grievance concerning his claims and he does not claim that he was prevented from properly exhausting available administrative remedies "through no fault of his own."[8] This is fatal to his claims against the defendant. Finding no genuine dispute of material fact on this issue, the court concludes as a matter of law that Monzon failed to exhaust available administrative remedies concerning his claims. Accordingly, Sgt. Evans is entitled to summary judgment.[9]

---

[8] To the extent Monzon might argue that the grievance process was not "available" to him because he mistakenly believed that the informal complaint response that an investigation was opened had somehow removed his complaint from the VDOC's established grievance procedure, any such argument fails. *See Ross v. Blake*, 578 U.S. 632, 641−42 (2016) (refusing to recognize a "special circumstances" exception to the exhaustion requirement where the prisoner reasonably, but mistakenly, believed that he had sufficiently exhausted his administrative remedies); *Williams*, 2022 U.S. Dist. LEXIS 163320, at *6 (even if the inmate misunderstood his exhaustion obligations during the concurrent PREA investigation, that mistake would not make administrative remedies unavailable to him).

[9] Although his claims are grouped together in the parties' and court's exhaustion analysis, the court notes that Monzon's informal complaint does not explicitly mention an equal protection violation. To be sure, the court notes that Monzon's allegations fail to state a cognizable equal protection claim. The Equal Protection Clause of the Fourteenth Amendment generally requires the government to treat similarly situated people alike. *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439−41 (1985). To state a viable equal protection claim, an inmate "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination" on the basis of the plaintiff's membership in a protected class, such as race, gender, or religion. *Id.* (internal quotation marks omitted). The plaintiff must next show that the policy is not reasonably related to legitimate penological interests. *Id.* at 732. Once this showing is made, the burden shifts to a defendant to show the disparity is not an exaggerated response to a particular concern. *Morrison v. Garraghty*, 239 F.3d 648, 654-55 (4th Cir. 2001). Here, Monzon does not claim that the alleged disparate treatment was based on his membership in a protected class. As such, his non-exhausted allegations fail to state a cognizable equal protection claim.

**V.**

For the reasons discussed, the court will grant Sgt. Evans' motion for summary judgment.

The Clerk shall send copies of this memorandum opinion and the accompanying order to the parties.

**ENTERED** this 7th day of September, 2023.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE